IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARRY KRESS, | § | |
| | § | |
| Plaintiff, | § | C.A. No. 4:18-cv-3992 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| OPMNY, LLC d/b/a MERCHANT FIRST and | § | |
| DOUG E. MERRYMAN, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT

Defendants OPMNY, LLC d/b/a Merchant First ("OPMNY" or "the Company") and Doug E. Merryman ("Merryman," collectively "Defendants"), by and through the undersigned counsel, hereby responds to Plaintiff Barry Kress's ("Kress") Complaint as follows. Each of the paragraphs below corresponds to the numbered paragraph in the Complaint. Unless specifically admitted below, Defendants deny each and every allegation in the Complaint.

### RESPONSE TO "PARTIES"

1. Defendants admit the allegations of Paragraph 1 of the Complaint.

2. Defendants admit the allegations of Paragraph 2 of the Complaint.

3. Defendants admit the allegations of Paragraph 3 of the Complaint.

### RESPONSE TO "JURISDICTION AND VENUE"

4. For purposes of this action only, Defendants admit that venue is proper in the Southern District of Texas. Defendants deny the remaining allegations of Paragraph 4 of the Complaint.

5. Defendants admit the allegations of Paragraph 5 of the Complaint.

6. Defendants admit the allegations of Paragraph 6 of the Complaint.

### RESPONSES TO "FACTUAL BACKGROUND"

7.     For purposes of this action only, Defendants admit that OPMNY provides the services stated, that Merryman negotiated an employment contract with Kress on behalf of OPMNY, and that Kress executed an employment contract with OPMNY while he resided in Katy, Texas on January 25, 2016.  Defendants deny the remaining allegations of Paragraph 7 of the Complaint.

8.     For purposes of this action only, Defendants admit that an Employment Agreement existed between the parties, that Kress was hired to be the CTO for OPMNY at a salary of $360,000 per year, that Kress was to report directly to OPMNY's co-founders, and that his start date was February 5, 2016.  Defendants deny the remaining allegations of Paragraph 8 of the Complaint.

9.     For purposes of this action only, Defendants admit that Kress began his employment on February 5, 2016 as CTO, relocated to Tyler, Texas in June 2017, and resigned on October 22, 2018.  Defendants deny the remaining allegations of Paragraph 9 of the Complaint.

10.    Defendants deny the allegations of Paragraph 10 of the Complaint.

## RESPONSES TO "CAUSES OF ACTION"

### BREACH OF CONTRACT AGAINST OPMNY

11.    Defendants incorporate their responses to Paragraphs 1-10 as if fully set forth herein.

12.    Defendants admit the allegations of Paragraph 12 of the Complaint.

13.    Defendants deny the allegations of Paragraph 13 of the Complaint.

14.    Defendants deny the allegations of Paragraph 14 of the Complaint.

15.    Defendants deny the allegations of Paragraph 15 of the Complaint.

**FRAUDULENT INDUCEMENT AGAINST OPMNY AND MERRYMAN**

16.     Defendants incorporate their responses to Paragraphs 1-15 as if fully set forth herein.

17.     Defendants deny the allegations of Paragraph 17 of the Complaint.

**QUANTUM MERUIT AGAINST OPMNY**

18.     Defendants incorporate their responses to Paragraphs 1-17 as if fully set forth herein.

19.     Defendants admit Kress provided services to and for OPMNY.

20.     Defendants deny the allegations of Paragraph 20 of the Complaint.

21.     Defendants deny the allegations of Paragraph 21 of the Complaint.

**MONEY HAD AND RECEIVED AGAINST OPMNY**

22.     Defendants incorporate their responses to Paragraphs 1-21 as if fully set forth herein.

23.     Defendants deny the allegations of Paragraph 23 of the Complaint.

**RESPONSE TO "ATTORNEYS' FEES"**

24.     Defendants incorporate their responses to Paragraphs 1-23 as if fully set forth herein.

25.     Defendants deny the allegations of Paragraph 25 of the Complaint and deny that Kress is entitled to attorneys' fees.

**RESPONSE TO "PUNITIVE DAMAGES"**

26.     Defendants incorporate their responses to Paragraphs 1-26 as if fully set forth herein.

27.     Defendants deny the allegations of Paragraph 27 of the Complaint and deny that Kress is entitled to punitive damages.

## RESPONSE TO "JURY DEMAND"

28.     Defendants acknowledge that Kress has demanded a jury trial and also demand a trial by jury on all issues triable by right.

## RESPONSE TO "PRAYER FOR RELIEF"

29.     Defendants deny that Kress is entitled to any relief in this action, as requested or otherwise.

## DEFENDANTS' DEFENSES

As further answer and as additional defenses, but without assuming any burden that it would not otherwise have or admitting that it bears the burden of proof with respect to any of the following, Defendants assert the following defenses and alleges as follows.  Defendants reserve all rights to allege additional defenses that become known through the course of discovery.

## FIRST DEFENSE

30.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that the Complaint, and each purported cause of action therein, fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

31.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that any alleged conduct or omission by any Defendant was not the cause in fact or proximate cause of any injury alleged by Kress.

**THIRD DEFENSE**

32.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that should it be determined that Kress has been damaged, then said damages were proximately caused by Kress's own conduct.

**FOURTH DEFENSE**

33.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that any relief Kress may be entitled to under that cause of action should be barred and/or limited by subsequently discovered evidence of misconduct by Kress which would have resulted in Kress's termination.

**FIFTH DEFENSE**

34.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that to the extent Kress alleges that the Defendants have an obligation to which full performance has not been rendered or excused, not all conditions to said obligations occurred.

**SIXTH DEFENSE**

35.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Kress is barred from asserting any cause of action herein by the doctrine of accord and satisfaction.

**SEVENTH DEFENSE**

36.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that any Kress, by his own acts and omissions, is barred by the doctrine of unclean hands from asserting any of the claims upon which Kress seeks relief.

## DEFENDANTS' COUNTERCLAIMS

### THE PARTIES

37.     Plaintiff Kress is an individual who resides at 8550 Castleton Way, Tyler, Texas 75703.  Kress may be served with process by delivering a summons and a true copy of this Answer and Counterclaim to his address or wherever he may be found.

38.     OPMNY is a limited liability company, duly organized and existing under the laws of the State of Nevada, and is doing business in Alameda County, California.

39.     Doug E. Merryman is the majority owner of OPMNY and resides at 3746 Eastwood Way, Pleasanton, California 94588.

### JURISDICTION AND VENUE

40.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the lawsuit involves citizens of different states, and this action seeks to protect by way of injunctive relief contract rights, customer relationships, and confidential business information and trade secret information having a value in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and seeks damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Injunctive relief and a temporary restraining order are sought pursuant to Rule 65 of the Federal Rules of Civil Procedure.

41.     The Court also has jurisdiction over this matter because this action arises out of Kress's violation of the DTSA.  Therefore, the Court has subject matter jurisdiction of this action based on 28 U.S.C. § 1331.  This is also an action for breach of contract, misappropriation of trade secrets under the Texas Theft Liability Act ("TTLA"), breach of the duty of loyalty, conversion, and tortious interference with a contract.  This Court has subject matter jurisdiction over these causes of action under 28 U.S.C. § 1367.

42.     Personal jurisdiction exists over Kress because, upon information and belief, he resides in Texas and has caused harm and injury to Defendants in Texas by breaching his contractual and other common law and statutory obligations to them.

43.     Venue is proper because all or a substantial portion of the events giving rise to the claims described herein occurred in this District.  Kress worked from home in Katy, Texas and later in Tyler, Texas while he was employed by Defendants, he signed his Offer Letter ("Offer Letter" or "Employment Agreement") in Texas, and he maintained some of OPMNY's servers there as well.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### OPMNY's Services and Products

44.     OPMNY develops, manufactures, and sells solutions for credit card acceptance, cloud based terminal processing, credit card storage, gateway services, gift card services, ACH processing, credit card processing and merchant services (setting up a merchant with a merchant acquiring bank to accept credit card payments).  Each year OPMNY invests over $800,000 in the research, development, and engineering of these services.

45.     OPMNY has been in business since January 26, 2006. OPMNY is a registered Independent Sale Organization for WorldPay and has operated its own gateway since 2006. From 2006 to early 2015, OPMNY utilized a private label gateway from a third-party vendor. In early 2015, OPMNY started creating its own proprietary gateway. The impetus to create its own proprietary gateway was driven by OPMNY's desire to create intellectual property and unique products no other gateway could provide.

## Kress's Employment With OPMNY

46.     Kress was employed as OPMNY's CTO from February 5, 2016 until he resigned effective October 22, 2018.  Kress was hired on to OPMNY due to his preexisting relationship with Brent Gephart, a OPMNY co-founder.  Gephart knew Kress from his time as CTO a different company, and they have been friends for several years.  When OPMNY was looking to hire a CTO, Gephart recommended Kress for the position.

47.     In connection with Kress accepting his offer of employment, he received revenue and expense reimbursement commitments to several projects he had previously agreed to between Gephart, OPMNY, and OPMNY LLC.  Furthermore, in connection with accepting his offer of employment, Kress agreed to assign all rights to the design and intellectual property associated with the My Card Storage, Cloud Processing, Bank Adapter, Cloud Terminals, and Gift Card Platform technologies to OPMNY.  Further, Defendants relied on Kress as the CTO to setup the required controls to protect the Company's intellectual and proprietary Source Code and related software

48.     As CTO, Kress had access to OPMNY's confidential and proprietary information related to source code for OPMNY's technologies and was actively involved in confidential and proprietary discussions between Gephart and Merryman regarding specific development projects related to features, functions, and products OPMNY wanted to develop and to which Kress was tasked to manage and build with Company resources.  However, Kress was only authorized to access OPMNY's confidential and proprietary information in connection with his job duties, not for any other purpose.

49.     Upon information and belief, OPMNY asserts that while employed, Kress improperly diverted use of the Company's proprietary Source Code and related software and was

paid by third parties using the Company's proprietary software.  In particular, for clients including Pace Payments, Kress made at least one known business trip at Company expense to meet with the clients, who are using the Company's Source Code on their payment terminals.  OPMNY never received payment for this use, though.  When Merryman asked to come on one of these trips, Kress made an excuse and told him not to come.  OPMNY asserts Kress is receiving payments from these clients for use of the Source Code and software directly through his company Kress Designs rather than the Company. Upon information and belief, OPMNY believes it will discover other instances of Kress using his company Kress Designs to sell the use of the Company's proprietary Source Code and related software for his personal gain.

### Kress's Departure from OPMNY

50.     On October 22, 2018, Kress abruptly informed Merryman that he was resigning. Upon resignation, Kress disputed expenses from various projects that he alleged were never paid. Contrary to Kress's assertions, OPMNY has in fact reimbursed these expenses. Whenever Kress submitted an expense report, his expenses were timely paid.

51.     Kress stated that because he was not reimbursed for these expenses, he no longer assigned his intellectual property to OPMNY.  Contrary to Kress's assertions though, the Offer Letter Kress signed never contemplated assignment of intellectual property in exchange for the reimbursement of expenses.  Instead, the Offer Letter Kress signed required that he assign the intellectual property to OPMNY as a requirement of accepting and starting employment with the company, which he did.  Kress and Merryman even had a phone conversation while negotiating the Offer Letter where Kress expressed no issue in assigning his intellectual property to the Company, and he understood the assignment was not contingent on the revenue and expense commitments in his Offer Letter.  Moreover, while he worked for the Company, Kress was not the

sole engineer behind developing and improving the intellectual property.  Instead, OPMNY during Kress's employment had employed a team of as many as two dozen software developers to work on its technologies.

52.     Moreover, Kress was never entitled to the revenue contemplated by the Offer Letter: either the technologies made no revenue, or in some instances where the revenue would be paid net of costs, the technologies did not make any revenue that exceeded costs in order to satisfy the condition that Kress was due payment.  Kress and Merryman discussed this in a phone conversation while negotiating the terms of the Offer Letter, and Kress also confirmed that he understood if the Company was not making any money on the products that he would therefore not be paid under the revenue commitments as a result.  Further, Kress only questioned Merryman once during his two and a half years of employment as to whether he was entitled to any revenue sharing for any of the technologies.

53.     Due to Kress's abrupt resignation, OPMNY never had an opportunity to conduct an exit interview, and his resignation letter specifically stated the only contact with him would be through his attorney.  As a result, OPMNY has been inhibited from discussing its concerns with Kress and confirming Kress was not involved in any further misconduct.

54.     Further, OPMNY's production servers running its intellectual property are running in a co-location data center Kress established under Kress Designs.  The obligation to maintain these servers remains with Kress Design because Kress never moved the account to OPMNY.  If Kress fails to pay resulting server maintenance invoices, the Company's services will be interrupted.

**Kress's Taking of OPMNY's Confidential and Proprietary Source Code**

55.    Upon Kress's separation from OPMNY, the Company learned that Kress had gained sole control of the company's Source for its MCS, Bank Adapter, and Gift Card programs. He did this by keeping the Source Code on his own Microsoft Azure personal account during this tenure with the company.  Further, the Defendants learned that Kress—in dereliction of his requirements under the Offer Letter and his fiduciary duty as CTO—never transferred the Source Code to the Company's control. Kress had no intention of transferring the Source Code at the time his employment with the Company commenced, and his failure to assign the intellectual property was always part of a plan to use it as leverage and a means of manipulation against the Company. By resigning, Kress locked all employees out of the Source Code for MCS, Bank Adapter and Gift Card programs.

56.    OPMNY has serious concerns that Kress will try to license, sell, or otherwise allow third parties to use proprietary technology of the company.  Indeed, OPMNY clients are continuing to use Source Code-generated software although OPMNY as a Company never received the funds owed to it.

57.    OPMNY has made a significant investment of time, money, and resources in developing its confidential information and trade secrets.  Specifically, the Company has spent three years and over $1,500,000 developing its confidential and proprietary business tools.  This intellectual property is a key competitive advantage for OPMNY and any loss of the confidential and proprietary information in this Source Code to competitors or unauthorized third-party service providers has the potential to severely impact OPMNY's position with customers and its revenue.

58.    OPMNY gains a significant competitive advantage by maintaining the secrecy of the Source Code.  If a competitor were able to obtain the Source Code, the competitor would have

the ability to quickly and efficiently engineer its own version of the Source Code and duplicate OPMNY's technologies.  This would give a competitor a tremendous and unfair competitive advantage and allow it to expand into new markets without undertaking significant time and investment to develop its own technologies.

59.     OPMNY expends significant resources to protect the confidential and proprietary information as well, and it goes to great lengths to maintain the confidentiality of this information. OPMNY employs numerous physical and electronic security measures and maintains several policies to safeguard and protect its confidential and proprietary information.  These measures include restricting access, restricting user credentials necessary to update source code, and restricting user credentials and information security protocols on computers and networks. OPMNY also asks all employees to sign an intellectual property document specifying the information is confidential and proprietary and confirming that it is the property of OPMNY.

60.     Upon information and belief, Kress intends to use the Source Code to unfairly compete with OPMNY, as the Source Code that Kress has misappropriated is extremely beneficial for him.  Kress, through his company Kress Designs, could license or sell the Source Code to a competitor and gain an independent source of revenue for himself as a result.  Kress could also use the Source Code as leverage for gaining employment at a competitor.  Further, Kress could recreate other OPMNY technologies by referencing the Source Code.  Retaining the Source Code would therefore provide Kress, and potentially a new employer, with a significant improper advantage.

61.     Overall, Kress's actions are a direct violation of the Offer Letter, OPMNY's policies, and the law.

## DEFENDANTS' COUNTERCLAIMS

Defendants hereby counterclaim and allege against Kress as follows:

## FIRST COUNTERCLAIM: BREACH OF CONTRACT

62.     OPMNY repeats and realleges the allegations contained in paragraphs 1 through 61.

63.     The signed Offer Letter constitutes a valid and binding written contract.

64.     OPMNY has performed all of its contractual obligations owed to Kress under the terms of the Offer Letter.

65.     On information and belief, Kress has unjustifiably and inexcusably breached, and continues to breach the Offer Letter by: (1) failing to assign the Source Code to the Company during his employment; (2) failing to return OPMNY's confidential information and Source Code belonging to OPMNY upon termination of his employment; (3) failing to take adequate steps to safeguard the Company's intellectual property as required by his position of CTO; and (4) using and retaining OPMNY's confidential information without permission upon resignation, including but not limited to the Source Code.

66.     As a direct and proximate result of these breaches of the Employee Agreement, OPMNY has been damaged and has suffered irreparable harm, and continues to suffer significant irreparable harm.

## SECOND COUNTERCLAIM: MISAPPROPRIATION OF TRADE SECRETS UNDER THE TEXAS THEFT LIABILITY ACT

67.     OPMNY repeats and realleges the allegations contained in paragraphs 1 through 66.

68.     The Source Code and related software are confidential and constitute proprietary trade secrets belonging to OPMNY.

69.     The Source Code and related software give OPMNY a substantial competitive advantage over its existing and would-be competitors due to the significant investment of time, money, and resources that have been poured into developing them. These advantages would be lost if the Source Code became known to the public or to OPMNY's competitors.

70.     OPMNY has made reasonable efforts under the circumstances to preserve the confidentiality of the Source Code including but not limited to, restricting access to a limited number of employees and restricting access through user account permissions to computers and company networks.

71.     OPMNY's Source Code and related software therein derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure.

72.     Kress is subject to a continuing obligation to keep OPMNY's Source Code confidential and not to engage in any unauthorized use or disclosure of them.

73.     However, Kress has wrongfully converted and misappropriated OPMNY's confidential and propriety information and trade secrets, and upon information and belief disclosed them to competitors, and used them for his benefit in breach of the Employee Agreement and his confidential relationship with OPMNY and duty to OPMNY.

74.     As a direct and proximate result of Kress's actions, OPMNY has been greatly damaged, has suffered irreparable harm, and continues to suffer significant irreparable harm.

## THIRD COUNTERCLAIM: VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1836 *et seq.* ("DTSA")

75.     OPMNY repeats and realleges the allegations contained in paragraphs 1 through 74.

76.     OPMNY develops and sells its services in several states throughout the United States. The Source Code, which contain and reflect confidential and proprietary information regarding that equipment, is used and is intended to be used in several states throughout the United States. Therefore, the Source Code and related software have been used in interstate commerce and are intended to be used in interstate commerce.

77.     The Source Code and related software are confidential and constitute proprietary trade secrets owned by OPMNY.

78.     The Source Code contains business, scientific, technical and engineering information, including programs and codes.

79.     OPMNY has taken reasonable measures to preserve the confidentiality of the Source Code, including limiting access to only three employees of the Company, restricting access to the Source Code and limiting permissions of those employees with access

80.     OPMNY's Source Code and related software derive actual independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information contained therein.

81.     Kress is subject to a continuing obligation to keep OPMNY's Source Code confidential and not to engage in any unauthorized use or disclosure of them.

82.     However, Kress has knowingly improperly acquired and retained OPMNY's confidential and propriety information and trade secrets, and upon information and belief disclosed them to competitors, and used them for his benefit in breach of the Employee Agreement and his confidential relationship with OPMNY and duty of loyalty to OPMNY.

83.     As a direct and proximate result of Kress's actions, OPMNY has been greatly damaged, has suffered irreparable harm, and continues to suffer significant irreparable harm.

### FOURTH COUNTERCLAIM: BREACH OF THE DUTY OF LOYALTY

84.     OPMNY repeats and realleges the allegations set forth in paragraphs 1 through 83.

85.     As CTO of OPMNY, Kress owed OPMNY a duty of loyalty and as a former employee, Kress owes a continuing duty of loyalty to OPMNY.

86.     Kress has breached his duty of loyalty owed to OPMNY by, among other things, failing to take adequate steps to safeguard the Company's proprietary and intellectual property, taking and misappropriating OPMNY's confidential and proprietary information and trade secrets, and using and disclosing OPMNY's confidential information without permission, including the Source Code.

87.     As a direct and proximate result of Kress's breach of the duty of loyalty, OPMNY has been greatly damaged, has suffered irreparable harm, and continues to suffer significant irreparable harm.

### FIFTH COUNTERCLAIM: CONVERSION

88.     OPMNY repeats and realleges the allegations set forth in paragraphs 1 through 87.

89.     Kress's employment with OPMNY ended on October 22, 2018.

90.     Prior to Kress's departure from OPMNY, he improperly took, retained, and failed to return to OPMNY its trade secrets and confidential information in the form of the Source Code.

91.     Kress was not authorized by OPMNY to retain, take, or not return any of this confidential and proprietary information when his employment with OPMNY ended.  Kress was required to return to OPMNY all documents or things belonging to OPMNY and cease accessing the Source Code.

92.     Likewise, Kress convinced clients to pay him directly through his company Kress Designs rather than paying OPMNY, although though the clients used and continue to use OPMNY technology.

93.     As a direct and proximate result of Kress's conversion of OPMNY's confidential information and trade secrets and client payments, OPMNY has been greatly damaged, has suffered irreparable harm, and continues to suffer significant irreparable harm.

**SIXTH COUNTERCLAIM: TORTIOUS INTERFERENCE WITH A CONTRACT**

94.     OPMNY repeats and realleges the allegations contained in paragraphs 1 through 93.

95.     On information and belief, OPMNY has reason to believe that Kress improperly diverted funds which were due to the company and instead had the client pay Kress directly.  In particular, for clients including Pace Payments, Kress made trips at company expense to meet with the clients, who were using the Source Code on their payment terminals.  OPMNY never received payment for this use, though.

96.     When Merryman asked to come on one of these trips, Kress made an excuse and told him not to come.  OPMNY believes Kress convinced these clients to pay him directly rather than the Company, and they continue to do so even though they are currently using OPMNY technology.

97.     As a direct and proximate result of Kress's tortious interference with a contract, OPMNY has been damaged and has suffered irreparable harm, and continues to suffer significant irreparable harm.

## JURY DEMAND

Defendants demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants demand that judgment be entered in its favor and against Kress as follows:

1.      That Kress's Complaint be dismissed with prejudice;

2.      That Kress be ordered to provide to OPMNY any originals and all copies of all documents containing OPMNY confidential and proprietary information and/or trade secrets that he obtained from OPMNY during his employment with OPMNY, including all Source Code;

3.      That Kress be temporarily, preliminarily, and permanently enjoined and restrained from, directly or indirectly, failing to maintain OPMNY's data servers or causing in any way an interruption of service on behalf of OPMNY;

4.      That Kress be temporarily, preliminarily, and permanently enjoined and restrained from, directly or indirectly, utilizing, divulging, and/or relying on OPMNY's confidential and proprietary information and/or trade secrets, including, the Source Code personally or through any third party;

5.      That Kress be ordered to provide OPMNY with his personal computer(s) and any computers or other electronic devices that ever-contained electronic documents marked as being confidential to OPMNY, or that Kress had attached to systems or networks that are proprietary to OPMNY;

6.      That this Court enter a declaratory judgment finding that OPMNY is the legal and sole owner of the intellectual property Kress assigned to OPMNY as part of his offer of acceptance

and all intellectual property subsequently developed for OPMNY while Kress was employed at the Company; and

7.      That this Court order specific performance against Kress requiring assignment of the intellectual property Kress agreed to assign to OPMNY as part of his offer of acceptance and all intellectual property subsequently developed for OPMNY while Kress was employed at the Company.

8.      That Defendants be awarded attorneys' fees, costs and disbursements incurred as a result of this action;

9.      That Defendants be awarded damages in an amount to be proved at trial;

10.     That Defendants be awarded punitive damages; and

11.     That Defendants be awarded such other and further relief as the Court may deem just and proper.

Dated: October 29, 2018                Respectfully submitted,

                                   */s/ Jeffrey L. Johnson*
                                   Jeffrey L. Johnson
                                   State Bar No. 24029638
                                   Orrick, Herrington & Sutcliffe LLP
                                   609 Main St., 40th Floor
                                   Houston, TX 77002
                                   Telephone:    713.658.6450
                                   Facsimile:    713.658.6401
                                   jj@orrick.com

                                   ATTORNEYS FOR DEFENDANTS
                                   OPMNY, LLC d/b/a OPMNY and
                                   DOUG E. MERRYMAN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 29, 2018, a true and correct copy of the above and foregoing document will be served to all counsel of record pursuant to the Court's CM/ECF system.

*/s/ Jeffrey L. Johnson*
Jeffrey L. Johnson
